## MILES v. THE POSTAL TEL. CABLE CO.

## SELTZER v. SAME.

1. EVIDENCE.—Unless some material matter is sought to be brought out by the introduction of a scientific rule book, its exclusion from evidence works no harm.

2. IBID.—HIGHWAYS.—A COUNTY SUPERVISOR is a proper witness to testify that a certain road in his county is not a highway.

3. CHARGE is not on the facts, when stating issues raised by the pleadings.

4. TELEGRAPH Co.—A land owner does not encroach on the rights of a telegraph company by building a house on his abutting line near the company's pole.

5. A TELEGRAPH COMPANY must so construct its wires on a public way as not to endanger the building of an abutting owner.

6. CHARGE—Propositions of law charged and applicable to one case should be charged in another, *provided,* both cases are *similar* in *pleadings* and *testimony. Mitchell* v. *Light & Power Co.,* 45 S. C., 146, *distinguished from this.*

7. TELEGRAPH Co.—ELECTRIC SYSTEM—NEGLIGENCE—DAMAGES.—The same degree of care to prevent danger to adjoining property is not required of an ordinary adjoining owner, as of an electric system.

8. NEGLIGENCE—ACCIDENT.—It would not be proper to instruct a jury, "that an injury that is the result of many fortuitous circumstances is an accident, and not actionable." Definition of injuries arising from accidents not actionable, approved.

9. HARMLESS ERROR.—A discussion between Judge and lawyer as to admissibility of certain evidence after it is ruled out can work no harm.

10. TELEGRAPH Co.—NEGLIGENCE.—CHARGE excepted to is not on facts, but simply illustrative of rule of care required of telegraph companies in erecting and maintaining their wires.

Before GARY, J., Lexington, September, 1898.   Affirmed.

Action by George W. Miles against The Postal Telegraph Cable Co., for damages for loss of storehouse through negligent maintainance and construction of its wires, and another by H. B. Setzler against same, for loss of stock of goods in same house from same cause.   The charge is much the same in both cases, and in the first case is as follows:

The plaintiff's cause of action is set out in these words, omitting the formal part of the complaint—you will have the complaint before you, and you can see it—the cause of action is set out in these words: "That the defendant carelessly and negligently permitted and allowed one of its telegraph wires to become loose on one of the insulators attached to the telegraph pole just in front of plaintiff's storehouse, said insulator being also defective, unsafe and insecure, and carelessly and negligently permitted said telegraph wire to become detached from said defective insulator and telegraph pole, and to swag and fall upon a frame attached to the front of plaintiff's storehouse, which was used for an awning, and on the night of the said 20th of June, 1897, at about half-past 9 o'clock, said telegraph wire conveyed a current or currents of electricity on and into plaintiff's said storehouse, and thereby caused said storehouse to ignite and burn down." And the 7th allegation: "And the plaintiff further shows that the defendant erected said telegraph pole at the place aforesaid without the knowledge and consent of the owner of the land on which said pole was erected." Now you will see from the outset that the gist of this action is negligence on the part of the telegraph company; the telegraph company denies that it was negligent, denies that its wire conveyed a current or currents of electricity to the store of plaintiff, and caused it to ignite. That makes the issue. The defendant sets up an affirmative defense in these words: "And by way of affirmative defense this defendant alleges: That the cause of action set forth in the plaintiff's complaint herein was due to no fault on the part of this defendant, but to an act of God, over which this defendant had no control, and could not reasonably anticipate. And by way of further affirmative defense this defendant alleges: That the plaintiff herein contributed to the accident complained of in the complaint, by reason of having constructed and built the building and frame attached thereto, described in the complaint, encroaching upon the line of the public road and post road of the United States, as hereinbefore set forth, and too near to the

poles, wires and lines of this defendant, which were lawfully constructed, and had been so constructed and in successful operation long previous to the erection of the premises referred to in the complaint, and anterior to the period at which the alleged accident occurred, as set forth in said complaint, and that the plaintiff herein contributed to the injury complained of in said complaint." Now you see that is the issue. I have read what the complaint alleges as the cause of action; the defendant denies that, and sets up the further defense that it was an act of God, over which the defendant company had no control; and further, that plaintiff so negligently constructed his house, so near the pole of the telegraph line, as to contribute himself to the negligence. So your first inquiry will be, was the loss or damage to the plaintiff, if any, due to the fact that the Postal Telegraph Company, the defendant in this case, "carelessly and negligently permitted one of its telegraph wires attached to the telegraph pole in front of plaintiff's store to become detached from a defective insulator, and to swag and fall upon the frame in front of plaintiff's store, which caused it to ignite and burn down"—was the fire due to that cause, or was the fire due to an act of God? And in determining this issue, you will determine whether the store caused the wire to break by reason of the fact that the store was on fire, and heated the same, and caused it to break and become defective, or whether the wire, by reason of the defects complained of, caused the store to ignite. You will observe the defendant claims, contends, that the storehouse caught on fire through no fault of its management or its line of wires, but that by reason of the fact that the storehouse was on fire, it heated the wire, and caused the wire to come back. That is the defendant's contention. The plaintiff's contention is that the wires were carelessly and negligently constructed, that they failed to carry off such currents of electricity as would be reasonably anticipated, and by reason of that defect it became detached from a defective insulator, and conveyed

the current or currents of electricity into the storehouse of plaintiff, which caused it to ignite and burn down.

Now, what was the cause of the fire? In order for plaintiff to recover, he must show by the preponderance of the evidence, not that the fire occurred by lightning, but that it was due to defects in the manner in which the defendant, the Postal Telegraph Company, either constructed its wires, or being properly constructed, in not being kept in proper repair; by reason of defective construction, or not keeping it in proper repair, it failed to carry the current or currents of electricity that might be reasonably expected that they would carry off, and by reason of that defect it caused it to fall down, and caused the storehouse of the plaintiff to burn. Now, with reference to determining that question, I charge you as matter of law that the Postal Telegraph Company gets its authority to erect its line of wires from the General Assembly of the State, and if it is chartered, it has the right to construct and operate a line of telegraph wires; but the law enjoins upon it this duty, that the wires must be so constructed, and must be kept in such repair, as to withstand all such ordinary storms, or such changes in the weather occasioned by heat or cold, as a man of ordinary prudence and reason would foresee under the circumstances. Now, if it did that, there is no negligence; if it didn't do that, was it defective? and from that you determine whether it was negligent, careless in its construction or maintenance. The gist of this action is negligence; you must find negligence to make the company liable. If there was negligence, then did that negligence cause the storehouse of this plaintiff to ignite and burn down? As I take it, the gist of this action is negligence. If you find there was no negligence, then, of course, the cause of action has failed, and the plaintiff could not recover; if there was negligence in the construction of the wire, or in not having it in proper repair, and the injury or damage complained of was occasioned by that defect, then the company would be liable for whatever damage was sustained by reason of that act of negligence.

Now, as to the act of God.   Of course, it would be a pre-
posterous proposition to say that where one operates a tele-
graph wire or a railroad wire, that they necessarily become
insurers.   Lightning frequently . strikes ` barns, dwelling
houses, when there is no telegraph wire near by.   By reason
of the fact that a telegraph company erected a wire, they do
not necessarily become insurers of property . adjacent; but
they are called upon to so construct them that they will not
break down, that they will not give way by reason of the fact
that a rain storm, or wind storm, or any condition of the
weather, that a man in erecting these wires might, with
proper prudence, proper forethought, proper care, antici-
pate; it would be his duty to so erect them as to withstand
any such wind storm or changes in the weather, that a man
of ordinary prudence and foresight could see.   But if the
accident was due to an act of God, if it was such that a pru-
dent man, of ordinary reason and foresight, could not rea-
sonably anticipate, then negligence could not be attributed to
the defendant company; that would be an act of God, for
which no one is responsible.   A corporation or private in-
dividual is not responsible for an act of God, unless the act
of God has been induced, the injury or damage contributed
to, by reason of some defect—in this case, the erection or
maintenance of the telegraph line.   I mean by that, this: If
a telegraph line is so constructed as not to be properly insul-
ated to carry off a current of electricity, and by reason of the
defect and the close proximity to the property of another,
induced the agency of any force, by the act of God, to de-
stroy this property—in this case, say through the careless
management, or careless erection or maintenance of this line
—then the party would be responsible, would be indirectly
conveying the act of God to this particular property, under
these circumstances; but if so erected, that a man of ordinary
caution, and prudence, and foresight could not reasonably
foresee that this damage would be occasioned by that, there
would be no negligence under these circumstances.

You have heard considerable about this telegraph wire and

its construction, both on the part of the plaintiff and on the part of the defendant.   Form your conclusion.   Was it constructed in such manner as a man of ordinary foresight and prudence would so construct as to anticipate such casualties, as have been complained of here?   If it was so constructed as to reasonably foresee and guard against those, it would not be negligence; if not so constructed, it would be negligence in the party if damage occurred, by reason of that construction.   Now, in all cases, both on the criminal and civil side of the Court, each party, plaintiff or defendant, has a right to submit what propositions of law he desires the Court to pass upon, as he deems pertinent or applicable to his side of the case; that is a legal right he has.   Counsel have availed themselves of that right; defendant's counsel has sent up the following requests to charge—some of which I have allowed, and others I have disallowed.   Those of them I think applicable and will aid you in coming to a conclusion in this case, I am going to give you, and those I don't think will aid you, I will refuse.   In this case, from counsel's argument on the propositions of law, I have derived a great deal of information, just as you frequently derive information from arguments on the facts of a case; but after all you must determine the facts for yourselves, and I must determine the law for myself.   You hear arguments on the facts, and you draw your own conclusion.   I hear arguments on questions of law, and I draw my conclusions, and give you those that are properly stated.

In reference to this allegation of the complaint: "7th. And the plaintiff further shows that the defendant erected said telegraph pole at the place aforesaid without the knowledge and consent of the owner of the land on which said pole was erected."   Now, with reference to their right to erect this telegraph line at this particular point, I charge you this proposition of law: "If the jury find that the defendant in this case, the Postal Telegraph Cable Company, was, at the time of the injury complained of, and previous thereto, a telegraph company duly incorporated and organized under

the laws of the State of New York, and that it had accepted
the provisions of the act of Congress of July 24th, 1866, and
that under the provisions of that act, and the acts of Con-
gress amendatory thereof, it had erected its poles and wires
along the continuation of Center street, just outside of the
corporate limits of the village of New Brookland, and that
the said continuation of Center street was used by the public
as a highway, upon which they traveled to and fro at will,
then I charge you that the defendant lawfully erected its
lines upon said continuation of Center street, and that it had
a right to work and operate said lines of poles and wires
upon said continuation of Center street." Plaintiff contends
it was put there without the authority of the owner of the
land. That is in reference to that allegation of the com-
plaint. "2. If the jury find that the defendant in this case,
the Postal Telegraph Cable Company, was, at the time of the
injury complained of, and previous thereto, a telegraph com-
pany duly incorporated and organized under the laws of the
State of New York, and that it had accepted the provisions
of the act of Congress of July 24th, 1866, and that under the
provisions of that act, and the acts of Congress amendatory
thereof, it had erected its poles and wires along the continua-
tion of Center street, just outside of the corporate limits of
the village of New Brookland, and that the land upon which
it erected its poles and strung its wires was the property of
John R. Shuler, and that he gave permission for the erection
of the said lines, and has never revoked such permission,
then I charge you that the defendant lawfully erected its
lines upon said continuation of Center street, and that it had
a right to work and operate said lines of poles and wires
upon said continuation of Center street." I charge you fur-
ther, that if this is the land of Mr. Shuler, whether he gave
the company permission to erect a telegraph line on his line
or not, if it is erected there and in operation, no third party
can punish the telegraph line upon the ground that it is on
land of Mr. Shuler without his consent; Mr. Shuler is the
party to make that objection, and not the third party.

The third request I refuse.    The fourth I give you: "If the jury reach the conclusion that the injury complained of was due to an act of God, over which the defendant had no control, and could not reasonably anticipate, then I charge you that the plaintiff is not entitled to recover."    I have already charged you that if it was an act of God over which the defendant had no control, and could not reasonably anticipate, then I charge you the plaintiff is not entitled to recover.

The fifth I charge you: "I charge you that the plaintiff in this action, whose suit is founded on the alleged negligence of the defendant, must not only establish the negligence by competent evidence, but he must show that such negligence was the cause of the injury for which he sues."    That I charge you, as I have already done.

The sixth I charge you in part only: "The question for you is, were these lines erected so as to anticipate any ordinary occurrence in the weather?    Was it the act of God, or was it the careless or loose manner in which the wires were erected, which caused this alleged wire to break?    If the testimony satisfied you that it was broken, and that the breaking of the wire was the cause of the injury complained of; if it was the act of God—that is, such an act that a business man of ordinary forethought and prudence could not anticipate—then the company would not be liable under these circumstances.    But, on the other hand, the company is charged with so placing their wires, and so keeping them in repair, as to withstand the ordinary weather, rain, heat, cold and wind."    That I charge you.    The balance I refuse.

The seventh I refuse.    The eighth I refuse.    The ninth I refuse.    The tenth I refuse.

The eleventh I give you: "I further charge you that an injury that could not have been foreseen or reasonably anticipated as the probable result of an act of negligence, is not actionable."    That I charge you to be the law.

The twelfth I give you: "I further charge you that an injury that is not the natural consequence of an act of negli-

gence, and that would not have resulted from it, but for the interposition of a new and independent cause, is not actionable."

The thirteenth I refuse.

The fourteenth I charge you: "I further charge you that if the plaintiff fails to show that the negligence with which he charges the defendant was the proximate cause of the injury, he cannot recover." The negligence complained of must be the proximate cause of the injury. * * *

From judgment for plaintiff in both cases defendant appeals.

*Messrs. Mordecai & Gadsden,* for appellant, cite: *As to charge on the facts:* Art. V., sec. 26, Con. 1895; 47 S. C., 488; 49 S. C., 497, 558, 294; 110 U. S., 582; 51 S. C., 453; 25 S. C., 30; 53 S. C., 448. *As to injuries arising from "many fortuitous circumstances:"* 55 Fed. R., 949; 94 U. S., 469; 85 Pa. St., 293; 1 Strob., 525; 8 Taunt., 535; 8 East., 1; 7 Bing., 211; 20 Wend., 223. *As to refusal to admit the rules of the Society of American Electrical Engineers:* 4 R. I., 528; 36 Eng. L. & E., 510.

*Messrs. P. H. Nelson* and *G. T. Graham,* contra, cite: *In considering errors in charge, it must be considered as a whole:* 22 S. C., 191; 23 S. C., 199; 29 S. E. R., 259. *Charge contains all the law applicable to case of this kind:* 22 S. E. R., 767. *No error to state issues raised by pleading:* 28 S. E. R., 193; 27 S. E. R., 555; 27 S. E. R., 613; 24 S. E. R., 291; 24 S. E. R., 812. *No error to refuse request when substance has been given:* 30 S. E. R., 697, 617; 29 S. E. R., 233; 20 S. E. R., 745. *Nor when already given:* 26 S. E. R., 669; 28 S. E. R., 301; 24 S. E. R., 812. *Nor when it assumes existence of a fact:* 23 S. C., 110,284. *Nor when it contains unsound proposition of law:* 30 S. C., 602; 22 S. E. R., 771. *Stating hypothetical case is not charging on facts:* 22 S. C., 164; 25 S. E. R., 797; 27 S. E. R., 555; 27 S. E. R., 613; 28 S. E. R., 193.

June 28, 1899.    The opinion of the Court was delivered
by

MR. JUSTICE POPE.    The foregoing actions, though sepa-
rate and distinct, involve practically the same questions, and
will be disposed of together, for the plaintiff, Miles, owned
the building in which was stored the goods of the plaintiff,
Setzler, which building and stock of goods were destroyed
by the same fire on the night of the 20th of June, 1897,
which fire both plaintiffs alleged was communicated through
one of the telegraph wires which the defendant carelessly
and negligently permitted and allowed to become loose on
one of the insulators attached to the telegraph pole just in
front of the storehouse of the plaintiff, Miles, thereby caus-
ing said telegraph wire to swag and fall upon a frame at-
tached to the front of said storehouse, and convey a current
or currents of electricity by which said storehouse and stock
of goods were burned and destroyed, to the damage of the
plaintiff, Miles, $300, and to the damage of the plaintiff,
Setzler, $500.    The defendant's answer set up that it was
authorized under an act of Congress, passed in 1866, and
subsequent amendments thereto, to construct its lines of tele-
graph upon highways and post roads of the United States,
of which highways and post roads, it claims the road in Lex-
ington County, State of South Carolina, wherein its tele-
graph line was located, in front of the storehouse of the
plaintiff, Miles, to be, and that the said defendant, the Postal
Telegraph Cable Company, was operating under the inter-
state commerce provision of the United States Constitution,
having its lines of telegraph leading from other States to the
west of South Carolina through said State of South Caro-
lina, to other States on the east of said State of South Caro-
lina.    It denied all the allegations of fact embodied in the
complaints.    It set out two other affirmative defenses:
First. That the fire which occasioned the loss to plaintiffs
was the act of God.    Second. That plaintiffs were guilty of
contributory negligence by reason of building such store-
house so close to defendant's telegraph line, that such struc-

ture and building encroached upon the post road and highway whereon the defendant had already constructed its telegraph line.   Both sides to the controversy introduced testimony at the hearing before Judge Ernest Gary and jury, at the September Court of Common Pleas for Lexington County.   A verdict was rendered, in each action, for the plaintiff.   The defendant now appeals in each case.

The ninth exception questions the ruling of his Honor, the Circuit Judge, whereby he refused to allow the admission in evidence of the rules of the Society of American Electrical Engineers, concerning the construction of wires.   The record disclosed that the defendant had an electrician as an expert who testified fully as to the construction of wires, and was asked to testify from a book as to the tensile strength of No. 10 wire, and such testimony was admitted without question.   This witness was a member of this Society of American Electrical Engineers.   It nowhere appears in the record that there was any thing in these rules which defendant wished to have spread before the Court.   Unless some purpose of a material character was manifested whereby the admission in evidence of these rules of the Society of American Electrical Engineers was rendered necessary, we are not able to see how the defendant has been injured by this ruling of the Circuit Judge.   This exception is, therefore, overruled.

The eleventh exception complains that the witness, Lewis Langford, who was the county supervisor of Lexington County, and as such officer had control of all the highways and public roads of such county, was allowed to testify that the telegraph line of the defendant was not, in front of plaintiff, Miles', storehouse, on a public road or highway.   We cannot see how there could be any objection to this testimony, especially in view of the further facts that the public did not work the road in question, and that it had been used only for a few years, and had been opened by private parties for their convenience.   Let the exception be overruled.

All the remaining exceptions relate to alleged errors of omission or commission of the Circuit Judge in his charge to the jury.    Let the charge on Circuit be reported.    The first exception imputes error to the Circuit Judge because he used this language in his charge: " 'Was the fire due to that cause (because the defendant carelessly and negligently allowed one of its wires attached to the telegraph pole in front of plaintiff's store to become detached from a defective insulator, and to swag and fall upon the frame in front of the plaintiff's store, and thereby conveyed a current of electricity into the plaintiff's store, which caused it to ignite and burn down), or was the fire due to an act of God?    And in determining this issue, you will determine whether the storm caused the wire to break, by reason of the fact that the store was on fire, and heated the same and caused it to break and become defective, or whether the wire, by reason of the defects complained of, caused the store to ignite'—in that, in using the language herein quoted, his Honor charged upon the facts."    We understand that in this charge of the Circuit Judge he merely stated the issue between these contending parties, and that in so stating the issue, the attention of the jury was called to the requirements of the law in correctly determining such issue by the testimony.  · The Circuit Judge did not undertake to state the testimony in that part of his charge here construed.    The plaintiff contended in his complaint that the fire which consumed his storehouse was communicated through a defective telegraph wire, which led a current or currents of electricity thereto.    The defendant did not deny in its answer that the storehouse and the stock of goods therein were destroyed by fire, but insisted that the fire was communicated to the store by an act of God, for which it was in no wise responsible. Such being the case, and especially in view of the requests of the defendant to the Circuit Judge for his charge to the jury —which were charged—we do not think that the Circuit Judge charged upon the facts, in violation of the mandate of the Constitution.    This exception is overruled.

The next allegation of error consists in the refusal of the Circuit Judge to charge, "that if the jury find that the plaintiff herein purchased the land upon which the building in question was situated, subsequent to the completion, or erected the building subsequent to the completion, of the said lines by the defendant, and placed the building so that it encroached upon the line of the defendant's poles and wires, and too near to the same, then I charge you that the plaintiff contributed to the alleged injury complained of, and is not entitled to recover." There was no testimony that the building of the plaintiff encroached upon the line of the defendant's poles and wires. There was no testimony that plaintiff's storehouse was not upon his own land. As far as the testimony went, it was that the plaintiff's said storehouse was near to and opposite a pole of defendant, whereon wires were strung. Such being the case, the Circuit Judge had no right to charge a proposition concerning an encroachment upon the line of defendant's poles and wires by the plaintiff. A man has the right to the use of his own property, which means every part of it, and such proprietor is not to be stigmatized as encroaching upon the line of poles and wires of a telegraph company, simply because he builds a house on his own land opposite to a pole and wires of a telegraph company located on a way or road opposite to such lands of a private owner. On the contrary, it behooves a telegraph company, in its legal use of a way or road, or even a highway or post road, to guard such use so that no injury shall result to the property of its owner which may be located opposite such telegraph lines, through its negligence or want of due care. The Circuit Judge was right in his denial of this request, and, therefore, this exception is overruled.

The appellant next claims that the Circuit Judge should have charged: "6th. It is alleged on the part of the company that if this wire was broken, it was in consequence of a severe wind storm. Was it an ordinary day, such as is liable to occur at that time of the year? or was it one that could

not be anticipated? The law does not require impossibilities. If a cyclone, that could not be anticipated or reasonably foreseen, was the cause of that wire falling, and the company was not negligent in allowing it to remain there for an unreasonable length of time, then, under these circumstances, it would not be liable. But if the accident was due to the wires being improperly erected, or improperly maintained in repair, or having been properly erected, were broken and allowed to remain on the roadway an unusually long time, then, if the injury of the plaintiff occurred under those circumstances, the company would be liable to compensate him in damages, if such negligence was the cause of the injury for which he sues. Negligence is the want of due care. That expresses it in few words. Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation; or doing what such a person, under existing circumstances, would not have done; the essence of the fault being either in the omission or commission." This request to charge is taken from printed charge of Judge Ernest Gary, in the case of *Mitchell* v. *Light and Power Co.,* 45 S. C., 146. It is admitted that what was law four years ago should be law to-day. A principle of law announced in *Mitchell* v. *Light and Power Co., supra,* should be accepted in the case at bar, with this proviso, however, that the two cases should be similar. Is the case at bar similar to that just cited? On the 16th December, 1893, during the prevalence of a violent wind storm, one of the electric wires of the defendant (the Light and Power Co.), fully charged with electricity, broke, and the two severed ends rested on the ground in one of the thoroughfares of the city of Charleston, S. C. At 3 o'clock P. M., the plaintiff (Mitchell), while passing through this thoroughfare, was badly injured by the fallen wire. The action was instituted to recover damages for such injuries. The plaintiff, Mitchell, charged negligence on the part of the defendant, in that it permitted its wires, charged with electricity, to hang suspended over the

thoroughfare of a city so as to become dangerous to passengers on the street, and that the plaintiff, a passer, was seriously injured, &c.    The defendant (the Light and Power Co.) joined issue on these allegations, and set up the defense of contributory negligence on  the part of the plaintiff, Mitchell, and also the further defense that the injury resulted from the act of God.    Now the facts of the case at bar are distinct.    There was no allegation in the pleadings nor in the testimony that there was any storm of wind on the night of the 20th of June, 1897, but rain and lightning.    So, therefore, the Circuit Judge would have been in error if he had charged as requested, because no wind storm or cyclone existed in the case at bar, to break the wires.    Defendant in the case at bar urged that lightning, an act of God, is what set fire to plaintiff's property.    There was no question in the case at bar as to what broke the wires of the telegraph company—it was either the act of God or the burning of the storehouse.    This exception is overruled.

The fourth, fifth and sixth exceptions are as follows: Fourth.  Because his Honor refused to charge: "7th. I further charge you that the law does not require impossibilities of any person, natural or artificial, nor does it require that the defendant should have ready for service at every moment and at every point of exposure. an adequate force to overcome a sudden fracture of wire or any other like casualty in the shortest possible time.    All that it can be required to do in this connection is to maintain an efficient system of oversight, and to be prepared with competent and sufficient force ready to furnish, within a reasonable time, a proper remedy for all such casualties, reasonable ground to anticipate might occur."    Fifth. Because his Honor refused to charge: "8th. I further charge you that if you find that the wire fell from the defendant's pole, the defendant was entitled to a reasonable time after the falling of the wire to repair or remove it, and if the jury find that the injury to the complainant occurred before the expiration of such reasonable time, then the plaintiff is not entitled to recover any-

27—55

thing in this action.    If they removed or repaired the wire in a reasonable time, and were not negligent in allowing it to remain on the highway, then they would not be liable, because want of due care would not be established." Sixth. Because his Honor refused to charge: "9th. I further charge you if the jury find that if between the time when the defendant received notice of the breaking of the wire, if the proof shows that they ever received such notice, and the time at which the alleged injury occurred, there was no reasonable time in which the defendant could have repaired the wire, or could have removed it out of the way, then your verdict must be in favor of the defendant." These exceptions are all substantially copied from the charge of his Honor, Judge Ernest Gary, in the case of Mitchell *v.* Light & Power Co., *supra,* and were refused, not because the propositions embodied therein were not sound law, but because such propositions of law had no connection with the case at bar.    In this we think the Circuit Judge did not err.    The exceptions are, therefore, overruled.

The seventh exception is as follows: Seventh. Because his Honor refused to charge: "10th. I further charge you that if you find that the defendant in this case was lawfully upon the continuation of Center street, either by the fact of its being a post road of the United States, or upon the property of John R. Shuler, by his permission, and that such condition existed before the plaintiff could have, in this case, either acquired the land or built the building thereupon, then no notice to the defendant company to remove its pole or wires, given by the plaintiff in this action, if such notice were ever given, can render the defendant liable in this case, because the plaintiff having acquired the property after the erection of the defendant's plant, it was the plaintiff's duty to place his building sufficiently far from the defendant's plant as to reasonably prevent any danger of accident, and it was incumbent upon the plaintiff to exercise the same prudence, diligence and care in the erection of his building as is imposed on the defendant in the erec-

tion of its lines on the said highway." The Circuit Judge had charged much of this request in charging defendant's second request to charge, as will be seen by this quotation from his charge: "2. If the jury find that the defendant in this case, the Postal Telegraph Cable Company, was, at the time of the injury complained of, and previous thereto, a telegraph company duly incorporated and organized under the laws of the State of New York, and that it had accepted the provisions of the act of Congress of July 24th, 1866, and that under the provisions of that act, and the acts of Congress amendatory thereof, it had erected its poles and wires along the continuation of Center street, just outside of the corporate limits of the village of New Brookland, and that the land upon which it erected its poles and strung its wires was the property of John R. Shuler, and that he gave, permission for the erection of the said line, and has never revoked such permission, then I charge you that the defendant lawfully erected its lines upon said continuation of Center street, and that it had a right to work and operate said lines of poles and wires upon said continuation of Center street." "I charge you further, that if this is the land of Mr. Shuler, whether he gave the company permission to erect a telegraph line on his line or not, if it is erected there, and in operation, no third party can punish the telegraph line upon the ground that it is on land of Mr. Shuler, without his consent; Mr. Shuler is the party to make that objection, and not the third party." It will be thus seen that the Circuit Judge was quite careful to cover the rights of the defendant in his charge to the jury, when the defendant asked the Judge to charge that any ordinary usage of a man's property (by which it is meant when no extraordinary use is made of property, such as a powder magazine, electric plant or some such dangerous use), does not necessitate any thing more in such proprietor than a due respect to the rights of others, and could not be construed to mean that such proprietor of land should exercise the same prudence, diligence and care as that imposed by law upon the owner of an electric system. No doubt this

was the Circuit Judge's view of the matter.    Let this exception be overruled.

Eighth.  Because his Honor refused to charge: "13th.  I further charge you that an injury that is the result of many fortuitous circumstances, no one of which can be fairly said to have been its proximate cause, is an accident, and is not actionable."  We think the Circuit Judge could scarcely be called upon to charge the jury upon the effect of "many fortuitous circumstances," in relation to the proximate cause of an event.    We think, therefore, the Circuit Judge gave the jury sound propositions of law when he charged at defendant's request: "The eleventh I give you: 'I further charge you that an injury that could not have been foreseen or reasonably anticipated as the probable result of an act of negligence, is not actionable.'    That I charge you to be the law."    "The twelfth I give you: 'I further charge you that an injury that is not the natural consequence of an act of negligence, and that would not have resulted from it, but for the interposition of a new and independent cause, is not actionable.' "    This exception is overruled.

Appellant's next exception is: Tenth.  Because his Honor erred in holding as follows: "The test is, was that so built? Would a man of ordinary prudence, and foresight, and reason build them in the condition that was?    Any rule that does not come up to that mark is not competent."  We might decline to consider this exception in its present shape, inasmuch as it is near the end of appellant's exceptions, we will pass upon it.    As we understood it, when the Circuit Judge was passing upon the question of the admissibility of the rule of the Society of the American Electrical Engineers as to the construction of wires, &c., and after he had held such testimony incompetent, Mr. Mordecai, as defendant's attorney, said: "It was not unusual or improper to authorize these lines to be built, and to be as near in proximity to this building as it was."   Then it was that the Circuit Judge remarked: "That would not be the test. The test is, was that so built—would a man of ordinary pru-

dence and foresight and reason build them in the condition that was? Any rule that does not come up to that mark is not competent." Thus it is made manifest this was no charge of Judge Gary to the jury. It was more like a running discussion between lawyers and Judge, relating to the evidence required of a telegraph company in the construction of its lines. And this discussion was after the Judge had already decided that such rules were incompetent. Let the exception be overruled.

The last exception is as follows: Twelfth. Because his Honor erred in using the following language: "I mean by that this: If a telegraph line is so constructed as not to be properly insulated to carry off a current of electricity, and by reason of the defect and the close proximity to the property of another, induced the agency of any force, by the act of God, to destroy the property, in this case through the careless management, or careless erection or maintainance of this line, then the party would be responsible, would be indirectly conveying the act of God to this particular property, under these circumstances." In that using the language herein quoted, his Honor charged upon the facts. We cannot view the language of the Circuit Judge as in any wise commenting upon the testimony offered. All he is doing in what he says is to illustrate the rule of law governing telegraph companies. Let the exception be overruled.

It is the judgment of this Court, that each of the judgments appealed from in the two causes heard together in this Court be affirmed, and that the clerk of this Court send a remittitur down in each entitled action.